Johnson, J.
The sole question in the case is, whether, upon the facts found by the district court, Davis was entitled to credit for the payment in full of the amount of public money which the firm books showed was then due the corporation and township, to wit, $6,415.99, or whether that amount so paid should be eliminated from the partnership liabilities. It is found that from February 17,1869, said Davis, as treasurer, did deposit said public moneys in bank, to the credit of the firm, the sum of $155,285.05; that no separate account was kept in bank or by the firm of the public moneys so deposited, and that no partnership account was kept with Davis as treasurer of the amount, which the firm received from him as treasurer, except as the same appeared in the bank pass-books. It is a significant fact, found by the court, that while Davis was depositing these public moneys to the credit of the firm, Gelhaus made no objection to such deposit, but on the contrary, was a party to and approved the same. This made both members of the firm personally liable in the transaction. The public moneys so deposited, as well as the partnership moneys, were by the act of the parties mixed together and the findings show that the bank account of the firm was subject to check to pay private or public demands. It is further found that, at the time of dissolution, a statement was made of firm liabilities which, among other liabilities, showed the balance which the firm owed to Davis as treasurer at the date of such dissolution, and that such statement, of which Exhibit “C” is a copy, was furnished to Gelhaus, who made no objections thereto until the bringing of this suit. I may add that, in the petition filed in this ease, no objection was made to the assets of the firm being used to satisfy the demands due the township and corporation, nor does it appear that any objection was ever made, to this mode of doing business, but that it was approved by Gelhaus. Both parties concurred in depositing the public moneys in bank to the credit of the firm.
It was thereby converted to its use. It was mixed with *76 deposits of the firm. It was subject only to check in the firm name. In all respects it was treated by the parties as partnership moneys, out of which the partnership paid orders drawn upon Davis as treasurer. This credit to the firm on the books of the bank, became the common credit of the firm and the township. All this was with the knowledge, consent and approval of Gelhaus. The presumption held by the district court to exist, that no part of said funds were used by the firm, and that no firm liability existed, is at variance with the facts found, and the law of the case. These facts made the partnership liable to the township for money had and received.
This was a loan by the treasurer to his firm, approved bj^ Gelhaus.
It does not appear that Davis was using these moneys for his individual gain, but with the consent of his co-partner they were loaned to the firm. For- a long series of years these moneys had thus been at the disposal of the firm. Davis received no credit for them on the partnership books. Gelhaus seems to have regarded these public moneys as partnership liabilities, during the many years they were so deposited to the credit of the firm. He certainly so regarded them at the time of dissolution. He stipulated that Davis should take all the assets and pay all the partnership liabilities. At the same time he received a copy of the schedule of such liabilities, which included the amount due the corporation and township.
That each of these partners were equally guilty in the eye of the law for embezzling the public money is clear. See section 15 of an act, “ To establish the independent treasury of the State of Ohio” (2 S. & C, 1610).
This section, which was in force at the time of this transaction, provides; “that if any officer or othei person, charged with the collection ... or disbursement of the public money . . . belongingto the state, orto any county or toionship, or organized city or village in this state, shall convert to his own use, or to the use of any other person or persons ... or party whatever, in any way *77 whatever, or shall use by way of investment . . . or in any other manner or form whatever, or shall loan, with or without interest to any company ... or individual . . . any portion of the public money ... or in any other way or manner, or for any other purpose; or if any person shall advise, aid, or in any. manner participate in such act, every such act shall be deemed and held in law tó be an embezzlement of so much of the said moneys or other property, as aforesaid, as shall be thus converted, used, invested, loaned, deposited or paid out as aforesaid; which is hereby declared to be a high crime and misdemeanor, ’’etc.
The penalty upon conviction, subjects the person or persons to imprisonment in the penitentiary from one to twenty-one years, and to a fine equal to double the amount of money so embezzled, for the benefit of the parties in interest.
In view of the stringent provisions of this section, and of the facts found by the court, Gelhaus was guilty of advising, aiding and participating in converting to partnership uses the public moneys belonging to the township, and therefore was a particeps criminis, equally guilty with Davis and equally benefited by the transaction. Brown v. The State, 18 Ohio St. 496; Commissioners v. Bank of Findley, 32 Ohio St. 194. This section applies to township treasurers, as well as to other public officers. State v. Morton, 21 Ohio St. 669. We are thus led up to the question, what were the rights of these parties in this transaction (each being guilty of embezzlement), as against each other? At the time of the trial in the common pleas, the public demand for the money had been satisfied by Davis paying the same. It thus became a consummated transaction.
If Davis were individually liable to the public for such repayment, and Gelhaus was not, then he could not recover from the latter, for there is no contribution among wrongdoers ; so, if as a partner, he paid the money out of his own means, no contribution could be had for a like reason. The same is true of Gelhaus, each being guilty of a high crime or misdemeanor, no contract obligations between them are *78 enforcible at law. The law leaves them where it finds them. Where does it find them in this case?
For a series of years these specific public moneys were mingled with the partnership moneys, by deposit to the credit of the firm in bank, subject only to a partnership check, with the mutual consent of both partners. Out of this deposit both the firm liabilities and the public liabilities were paid indiscriminately. When they dissolved, in 1879, Gelhaus put into the possession of Davis all the assets of the partnership, the latter bought the stock of goods at an invoice price, he took the notes and- accounts due with sole authority to collect them, and out of the money so collected, and the amount to be paid for the stock of goods, he was to pay off all the partnership liabilities, and divide the surplus equally with Gelhaus. Upon the facts in this case, there was no surplus. Davis paid off all the liabilities including the amount due the township and corporation. To do this he advanced of his own moneys some $5,600, the assets being insufficient. lie now claims contribution from Gelhaus for one-half the money so advanced. If the conversion of this money had not been in violation of the law, he would be entitled to such contribution. But as it is, he is not so entitled. The law leaves him where it finds him. For a like reason Gelhaus is not entitled to the relief he asks.- He was personally liable, jointly with Davis, to the township and corporation to restore to them the money jointly converted to their own use. He recognized this as a partnership liability during the series of years they were partners, by allowing it to be deposited in the firm name in bank, and by allowing it to be drawn on from time to time to pay orders on his co-partner as treasurer. At the time of dissolution, it was stipulated that Davis should pay all partnership liabilities, and he then received a schedule of the same, the greater part of which embraced these public moneys owing to the township and corporation. The law will leave him where it finds him. He had delivered all the assets to Davis. *79 The stock of goods Davis owned absolutely by purchase, the notes and accounts due, he had possession of by agreement of the parties. All that he was liable to Gelhaus for, was one-half of the surplus, after paying partnership liabilities. As there was no surplus, there is no liability of Davis. Gelhaus can not be relieved from the payment of his share of this liability to the public which Davis had actually paid out of the fii’m assets. If there had been a surplus, his right to one-half is clear, but as there was none, the law leaves him where it finds him, as well as it does Davis. It finds the illegal transaction consummated, and neither party can disturb it. It finds Davis to have advanced money to discharge the partnership obligations to the township and corporation, and a large amount of worthless assets in his possession. It will leave him there.
Therefore, the court of common pleas was in error in allowing Davis contribution from his co-partner. It finds Gelhaus with no right to question what has been done under this illegal transaction. Davis, in paying off his public liability, has consummated the illegal transaction, and Gelhaus can not obtain affirmative relief by now repudiating the arrangement on his part. The district court, therefore, erred in opening up this consummated illegal transaction by throwing out of the credits in favor of Davis the amount he paid to discharge this partnership liability, and in dividing the uncollected assets in specie. These assets were entrusted to him by contract, to be collected and accounted for. It does not appear that he has violated that trust. If, hereafter, enough is collected to reimburse him, and leave a surplus, he is liable to his copartner for his share thereof. Our conclusion is, that upon the present state of facts, neither partner lias a right to recover of the other any money judgment. And that Davis is entitled to these uncollected assets to be accounted for under their contract of dissolution, counting the payment by him of the balance due for money advanced to pay the public as a partnership liability for the purpose of ascertaining *80 if there is a surplus to be divided. 1 Colyer on Partn., §§ 56 to 65, and notes.

Judgment reversed and cause remanded.